## HINES v. MASSACHUSETTS MUT. LIFE INS. CO.

No. 14545.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 17, 1943.

Tom B. Ridgell, of Dallas, and John Davenport, of Wichita Falls, for appellant.

W. E. Fitzgerald, of Wichita Falls, for appellee.

SPEER, Justice.

Massachusetts Mutual Life Insurance Company, hereinafter referred to as plaintiff, sued Harry Hines, hereinafter referred to as defendant, for a balance remaining unpaid on a promissory note.

Trial was to a jury. The court instructed a verdict for plaintiff and entered judgment thereon, from which judgment appeal was perfected by defendant.

Defendant had been a tenant for many years in plaintiff's building in the City of Wichita Falls and owed past-due rentals. On October 1, 1939, he executed a note to plaintiff in the sum of $2,736.61, with interest at six per centum per annum. The note was payable in 37 monthly instalments, 36 of which instalments were for $75 each and one instalment for $36.61. The first instalment was due and payable on or before October 1, 1939, and one instalment being due and payable on the first day of each month thereafter until fully paid with interest. The note provided that failure to pay the note or any instalment as above promised, or any interest thereon when due, should at the election of the holder of the note mature the full amount of the note. There were further provisions that if not paid at maturity and it should be placed in the hands of an attorney for collection or if collected by a suit, payor would pay ten per cent additional on the principal and interest then due as attorney's fees.

Between the maturity date of the first instalment and October 6, 1941, defendant paid 17 instalments and defaulted in the remainder of those maturing prior to the last-mentioned date. After default the note was placed in the hands of an attorney for collection and suit was instituted on the note by petition filed October 30, 1941. The petition enumerated the 17 payments and allowed credit therefor and asked judgment for the remainder of principal, interest and attorney's fees.

The record discloses that when suit was filed and service had, an agreement between the parties was had to the effect that if defendant would make certain payments and thereafter keep payments "current", i. e. paying $75 per month, no judgment would be taken but the suit would be left pending until full payment was made. Defendant met the requirements and began March 22, 1942, to make $75 payments each month. Again he defaulted in these instalments and was notified by the attorney that payments must be made, otherwise further legal action would be taken. On September 17, 1942, defendant wrote plaintiff's building manager, to whom he had been sending payments, to the effect that he was financially embarrassed; that he owed several old debts which he had been unable to pay and under special agreements was settling some of them on a basis of 50 cents on the dollar. In this connection he wrote to the building manager: "I would appreciate it if you would take it up with your people (plaintiff) and find out what kind of a discount they would make on the old account if

it is paid in cash right away, and if I can get some one to handle the above referred to accounts in the manner suggested I will give them the discounts on them." In the same letter defendant asked the manager to advise the amount of the unpaid balance according to his records for comparison to his own.

On September 24, 1942, Mr. Lynn, the manager, wrote defendant acknowledging receipt of his letter of the 17th, advising that he had taken up the matter of discounting defendant's debt to plaintiff, and that plaintiff would make no further concessions. In the same letter Mr. Lynn advised defendant, "Our records indicate that the balance is $486.61." Also advising defendant that he must make his note "current", otherwise the attorney would be advised to proceed to collect through the court.

On September 26, 1942, Mr. Lynn, the manager, received from defendant a check dated September 25, 1942, for $486.61, payable to plaintiff, and Mr. Lynn deposited the check on September 28th, for clearing. The check bore these words: "Note payment in full". Mr. Lynn testified that no letter accompanied the check. Defendant said he could not say whether he wrote a letter at the time or not, because he did not have his file present.

On September 30, 1942, the manager wrote defendant acknowledging receipt of the check for $486.61, and further said: "In our letter of September 24th we did not include in the amount of $486.61 the interest and attorney's fees. As this matter has been turned over to Attorney Fitzgerald for handling we have requested him to check the interest and amount due him for attorney fee which he will send you at an early date."

At some time subsequent to the receipt of the check from defendant (the date is not shown nor is the letter accompanying it in evidence), Mr. Lynn sent to defendant a full and complete statement of all payments made since the execution of the note by defendant including the $486.61 check in controversy, showing accumulated interest at the time of each payment. All accrued interest at the time of receipt of the last check is shown to be $300.65. This statement was introduced in evidence by the defendant.

Defendant relied upon his plea of accord and satisfaction, in transmitting his check for $486.61, bearing the words, "Note payment in full". He assigns as error the summary instruction to the jury, failure by the court to instruct a verdict in his favor and alternatively failure of the court to submit the special issues requested by him. There are other points of error set out but in the main they are in effect the same as those enumerated by us.

The controlling question for our determination is, Did the sending of the check for $486.61 by defendant, bearing the words, "Note payment in full", its receipt and deposit by Mr. Lynn, constitute accord and satisfaction of defendant's liability on the note, when the amount of the check did not pay any of the interest nor attorney's fees provided in the note sued on?

If the transmission of the check bearing the language mentioned, its receipt and deposit by Mr. Lynn, the building manager, did constitute accord and satisfaction, the instructed verdict given was error, while upon the other hand, if, under the circumstances of this case, it did not amount to accord and satisfaction, instructed verdict was correct.

We are of the opinion the court acted properly in the premises. Our reasons for this conclusion will be given.

█ The rule is well settled in this state that if there is a bona fide dispute as to the correctness of an account, or the amount involved between the parties and the debtor tenders his check to the creditor upon condition that it be accepted in full payment, the creditor must either refuse to receive the check, or accept the same burdened with its attached condition. Root & Fehl v. Murray Tool Co., Tex.Com.App., 26 S.W.2d 189, 75 A.L.R. 902.

█ If the trial court's judgment can be sustained by any theory of law involved, whereby there is no issue of fact for jury determination, it is not our prerogative to disturb it. Defendant dealt with Mr. Lynn, the manager of plaintiff's building. Lynn detailed his duties as such manager and they are not denied by any testimony in the case. It is unnecessary for us to set out such duties and authorities but suffice it to say that nothing appears to indicate that he could alter or compromise the note given by defendant to plaintiff, apparently his only duty was to collect it. Obviously this limitation of authority was known to the defendant, as evidenced by his letter of September 17th, above referred to, in which he asked Lynn to take it up with "his

people". It follows, that if Lynn, the building manager, could not have bound his principal, the plaintiff, by an absolute agreement to accept the check in full payment of the note, and thus compromise his principal's debt, certainly he could not thus impliedly compromise it by acceptance of the check for a less amount than the debt, because it bore the language above quoted.

■ Aside from this, to apply the rule of accord and satisfaction contended for by defendant, under the rule prevailing in this state, it must appear that there is a bona fide dispute existing between parties as to the amount owing by the debtor. We have been cited to no case, nor have we been able to find one, where the rule was applied when there was not a bona fide dispute between the parties as to the amount in controversy. This condition existed in all of the cases cited by the appealing defendant. They are, First State Bank of Panhandle v. Knapp et al., Tex.Civ.App., 3 S.W. 2d 468; Early-Foster Co. v. W. F. Klump & Co., Tex.Civ.App., 229 S.W. 1015; Root & Fehl v. Murray Tool Co., Tex.Com.App., 26 S.W.2d 189, 75 A.L.R. 902; and Kean v. Southwest Nat. Bank, Tex.Civ.App., 50 S.W.2d 839. To the above authorities may be added others referred to below, recognizing the same principles of law, together with timely discussion of the intentions of the parties and consideration for the application of the rule of accord and satisfaction.

In Bergman Produce Co. v. Brown, Tex. Civ.App. 156 S.W. 1102, it was held that in order that the payment of a sum less than the entire amount due shall become accord and satisfaction of the greater liquidated sum, the party claiming the accord and satisfaction has the burden of proof to establish a bona fide controversy or dispute as to the amount owing to the creditor.

In Baker v. Coleman Abstract Co., Tex. Civ.App., 248 S.W. 412, the rule is announced to the effect that part payment of an undisputed debt is an insufficient consideration for a promise to accept such payment in full of the debt, since the creditor has done no more than he was legally bound to do. In the cited case it was further held that a general manager in full charge of a corporation's business may compromise the debt of one owing the corporation, when there is a valuable consideration therefor, but absent such consideration he could not bind his principal by the release of an undisputed debt on payment of a part thereof by one liable for it all.

In McCarty v. Humphrey, Tex.Com.App., 261 S.W. 1015, 1016 (adopted by Supreme Court) it was held that a creditor's agreement to receive less than the whole debt, not supported by a valuable consideration, does not discharge the debt, and that accord and satisfaction is dependent upon the agreement of the parties; it does not follow in the absence of such mutual intent. The court cites and quotes from Gulf C. & S. F. R. Co. v. Gordon, 70 Tex. 80, 85, 7 S.W. 695, 697, as follows: " 'There can be no agreement expressed or implied when both parties have no intention to make it, or when one has but the other has not.' "

Hall Music Co. v. Robinson, Tex.Civ. App., 7 S.W.2d 625 involved a notice by the collector for payee of a note, to a debtor that amount of his note and interest was $52 and that upon receipt of that amount the note would be canceled and sent to him. The debtor promptly sent the check for the specified amount. In fact the statement was an error, the amount referred to was an instalment and much more remained unpaid on the principal obligation. When sued, the debtor pleaded payment because of the transaction referred to. Held, payment in cash of part of a liquidated debt which is due and about which there is no dispute will not bar the recovery of the residue, unless there has been some new consideration.

■ Defendant cites us to the rule announced in 1 Tex.Jur., sect. 19, p. 262, to the effect that payment of a lesser amount than the whole of an undisputed liquidated claim before maturity is sufficient consideration to sustain the promise to discharge the remainder and constitutes accord and satisfaction. As we read the authorities cited in support of the text, the announced rule is predicated upon the theory that the whole debt sought to be discharged was not due. That rule will not control here because clearly the whole debt was due and had long since been so declared; there was perhaps an offer of forbearance under named conditions but these conditions were never accepted or performed by defendant, and he cannot now claim to fall within the rule announced.

■ The undisputed facts in the instant case show that when defendant asked Lynn, plaintiff's building manager, for a statement of the remainder of his note and Lynn wrote him that the amount was $486.61, it was

a mistake on Lynn's part. The named amount was the balance of the principal unpaid, while none of the interest or attorney's fees had been paid. Defendant testified that he knew that the amount named by Lynn did not cover the whole indebtedness. There is nothing in the evidence to indicate that Lynn was willing to discount his principal's note by rebating the interest and attorney's fees. We have indicated that we do not think that he would have authority to do so, if he had tried, and that defendant knew this. Under authority of the McCarty-Humphrey case, supra, the minds of the parties did not meet and no contract, either expressed or implied, was made.

Defendant knew plaintiff had declined to make any concessions on the obligation. He said he knew when he sent the check with the words "Note payment in full" on it he owed a greater amount. There is nothing to show a dispute or controversy about the full amount owing, other than that defendant had complained at having to pay attorney's fees, but such complaint or protest did not amount to a bona fide dispute as to the amount in controversy. Kean v. Southwestern Nat. Bank, Tex.Civ. App., 50 S.W.2d 839.

Obviously defendant did not rely upon Lynn's information that $486.61 was the full amount of the debt; he said he knew he owed more but that he sent the check with the words "Note payment in full" on it, "just feeling them out". That he did not know whether they would accept it as payment in full or not; that people sometimes change their minds; that he sent the check thinking that they might accept it as payment in full, and if not, they would send it back; if they had sent it back he would have gone on and paid it out at $75 per month. When he sent the check, he apparently wrote no letter with the enclosure, and said he was "just feeling them out".

The seventh point relied upon asserts error in the court's refusal to submit defendant's requested issues. Defendant requested the giving of eight special issues; they were all incorporated in one request, but concluded by saying, "Defendant desires to offer each of the requested issues separately". However, in none of the requested issues was the burden of proof fixed. or remotely referred to. The court could not have given either of the requested issues in the form requested, even if there

had been a jury question for submission. Edmondson v. Carroll, Tex.Civ.App., 134 S.W.2d 378, writ dismissed, judgment correct. We think under the rules of civil procedure at present, requested issues could be presented in bloc under proper agreements of counsel with the consent of the court, but believing as we do that the instructed verdict was proper in this case, the manner in which defendant requested the issues becomes immaterial.

There being no error shown, and upon the authorities herein cited we conclude the judgment of the trial court should be and it is hereby affirmed.